**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FRIZZELL CANARY SUTHERLIN, JR.,

    *Plaintiff*,

v.                              CASE NO. 10-CV-10540

COMMISSIONER OF            DISTRICT JUDGE JULIAN ABELE COOK
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II. REPORT

#### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits (DIB), and supplemental security income (SSI) benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 12.)

Plaintiff was 52 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 12, 33, 105.) Plaintiff's employment history includes work as an electronic technologist in the telecommunications industry from 1991 through 2005. (Tr. at 122.) Plaintiff last worked in 2005. (*Id.*)

Plaintiff filed the instant claims (DIB and SSI) on January 20, 2007, alleging that he became unable to work on August 15, 2005. (Tr. at 105-08.) The claims were denied at the initial administrative stages. (Tr. at 63-64.) In denying Plaintiff's claims, the Defendant Commissioner considered diabetes mellitus and affective disorders as possible bases of disability. (*Id.*) On December 17, 2008, Plaintiff appeared via video conferencing before Administrative Law Judge ("ALJ") Ayrie Moore, who considered the application for benefits *de novo*. (Tr. at 9-23.) In a decision dated June 25, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 22-23.) Plaintiff requested a review of this decision on July 7, 2009. (Tr. at 6.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on December 4, 2009, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On February 8, 2010, Plaintiff filed the instant suit *pro se* seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is

multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of

disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program (SSI) of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2010, and had not engaged in substantial gainful activity since August 15, 2005. (Tr. at 14.) At step two, the ALJ found that Plaintiff's diabetes mellitus, affective disorder, history of heart conduction

disturbances, and status post the insertion of a pacemaker in the remote past were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. at 21.) At Step Five, the ALJ found that Plaintiff retained the residual functional capacity to perform a limited range of light work. (Tr. at 17-21.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 22-23.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was born with a heart murmur and has been treated with an implanted pacemaker since he was 35 years old. (Tr. at 35-36.) Plaintiff testified at the administrative hearing that he cannot stand on his feet for very long because of the fluctuations in his heartbeat, despite the fact that he has a pacemaker. (Tr. at 38.) However, in June 2007, Alok Maheshwari, M.D., of the Michigan Cardiovascular Institute, noted that Plaintiff was "asymptomatic and does not need any further cardiovascular testing at this time." (Tr. at 213-14, 239-40.)

In May 2007, Plaintiff was examined by Sujeeth R. Punnam, M.D., at the request of the Disability Determination Services ("DDS"). Dr. Punnam diagnosed Plaintiff with "[h]istory of major depression, now doing well on medications," "[h]ypertension, mildly uncontrolled," "[d]iabetes mellitus, Type II," and "[a]rrhythmia of the heart, status post pacemaker." (Tr. at 183.) Plaintiff indicated that his diabetes was controlled with oral medication and diet. (Tr. at 42.) A Physical Residual Functional Capacity ("RFC") Assessment concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand, walk, or sit (with normal breaks) about 6 hours in an 8-hour workday and had the unlimited ability to push or pull. (Tr. at 201.) The

7

assessment also found that Plaintiff was occasionally limited in his ability to climb stairs or ladders and was frequently limited in his ability to balance, stoop, kneel or crouch. (Tr. at 202.) There were no manipulative, visual, communicative, or environmental limitations established. (Tr. at 203-05.) There was no treating source statement with which to compare findings. (Tr. at 206.)

Plaintiff testified that he has been treated by Dr. Conic, a psychologist, twice a month for mental health issues since December 2007. (Tr. at 39-40.) Plaintiff was hospitalized in 2005 for depression and was given shock therapy, which helped, but "didn't sustain." (Tr. at 40-41.) Plaintiff stated that he has difficulty "interacting" and "remembering, staying on task." (Tr. at 42.) Plaintiff testified that he went to the emergency room in the summer of 2007 because he was having suicidal thoughts, but stated that he has not had such thoughts nor has he felt the need to return to the emergency room since then. (Tr. at 43, 164-69.) Plaintiff stated that the antidepressants and other medicines for diabetes and hypertension help his symptoms but seem to cause a loss of energy and stamina. (Tr. at 44.)

In May 2007, Plaintiff was evaluated by Nathalie Menendes, Psy.D., at the request of the DDS. Dr. Menendes concluded that Plaintiff had "Major Depressive Disorder, recurrent, moderate." (Tr. at 177.) A Psychiatric Review Technique completed in June 2007 diagnosed Plaintiff with affective disorders, specifically, "Major Depressive Disorder, recurrent, moderate." (Tr. at 186, 189.) The Review Technique also concluded that Plaintiff was mildly limited in his activities of daily living and maintaining social functioning, and moderately limited in maintaining concentration, persistence or pace. (Tr. at 196.) A Mental RFC Assessment concluded that Plaintiff was not significantly limited in most areas but was moderately limited in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to perform activities within a schedule, maintain regular attendance, be punctual within customary

tolerances, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. (Tr. at 208-09.) The assessment specifically noted that Plaintiff's "psychological limitations do not appear to interfere with the potential for task activities that are simple in nature. Claimant retains the mental residual capacity to perform step one and step two tasks on a sustained basis." (Tr. at 210.)

Plaintiff testified at the administrative hearing that he helps with the care of his father, who lives with him, and that he does housework, dishes, cooking, vacuuming, laundry, and yard work, although he qualified that he does these tasks in "pieces," i.e., for short durations. (Tr. at 49.) Plaintiff also drives, shops, walks around the block and bowls for exercise, goes to church, and reads. (Tr. at 50-51.) Plaintiff's adult function report was consistent with his testimony and noted that he has no problem with personal care, nor does he need reminders for his care or for taking medicines. (Tr. at 137-38.)

At the administrative hearing, the ALJ asked the vocational expert ("VE") to assume a person with Plaintiff's background who:

> can perform at the light exertional level of work as that term is defined. He can only occasionally climb stairs and the ramps and no ladders or scaffolds and because of his . . . mental condition he can only do one to two-step tasks on a sustained basis. And that he should have minimal contact with the public . . . same age as the Claimant, which as of his alleged onset date is a younger individual but now he's closer, closely approaching advanced age and the same education, which is highschool plus and the past work experience . . . [who] can work at proximity to others but not, not collaboratively . . . .

(Tr. at 57-58.) The VE testified that such a person could not perform Plaintiff's past relevant work but could perform the jobs of small products assemblers, injection mold machine tenders, inspectors, and hand packagers, all of which are available in significant number. (Tr. at 59-60.) If a sit/stand option is added, those jobs are not available. (Tr. at 60.) The VE noted that jobs with a sit/stand option generally involve interacting with the public. (Tr. at 60-61.)

9

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that during the time he qualified for benefits, Plaintiff possessed the residual functional capacity to perform a limited range of light work. (Tr. at 17-21.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the hypothetical was inaccurate because the "mental limitation for 'one to two step work tasks'" did not "sufficiently account for the entire 'moderate' limitation in the ability to maintain concentration, persistence, and pace." (Doc. 9 at 7, 12.)

Although Plaintiff relies on that portion of the mental RFC Assessment which stated that Plaintiff's ability to maintain concentration, persistence and pace was moderately limited, Plaintiff appears to ignore the other statements in the RFC Assessment indicating that Plaintiff's "psychological limitations do not appear to interfere with the potential for task activities that are simple in nature" and that Plaintiff "retains the mental residual capacity to perform step one and step two tasks on a sustained basis." (Tr. at 208-10.)

Therefore, I suggest that the hypothetical embraced all of the findings in the RFC Assessment when it asked the VE to consider a person who "can only do one to two-step tasks on a sustained basis." (Tr. at 57-58.) I further suggest that the hypothetical questions accurately portrayed Plaintiff's individual impairments in harmony with the relevant objective record medical evidence and Plaintiff's own testimony that he helps with the care of his father who lives with him, does housework, dishes, cooking, vacuuming, laundry, yard work, drives, shops, walks around the block, bowls, goes to church, and reads. (Tr. at 49-51, 57-58, 137-38.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

**III. REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                            s/ Charles E Binder
                                            CHARLES E. BINDER
Dated: November 15, 2010                 United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: November 15, 2010                        By     s/Patricia T. Morris
                                                        Law Clerk to Magistrate Judge Binder